UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TYSON KEPLINGER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17-CV-649-JD-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Tyson Keplinger, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (ISP 17-02-270) where a Disciplinary Hearing Officer (DHO) found him guilty of violating a state law, which in turn is a violation of Indiana Department of Correction (IDOC) policy A-100. ECF 1 at 1. As a result, Keplinger was sanctioned with the loss of 150 days earned credit time. ECF 15-6 at 1. The Warden has filed the administrative record and Keplinger has filed a traverse. Thus this case is fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418

U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

In this case, Keplinger was found guilty of violating a state law for defrauding a financial institution in contravention of IDOC policy A-100, which prohibits inmates

from violating any state law. *See* Indiana Department of Correction, Adult Disciplinary Process: Appendix I, at http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The particular state law violation that Keplinger committed involved his participation in credit card fraud with another offender in violation of Indiana Code 35-43-5-8(a), a level 5 felony. The applicable statutory provision states:

> (a) A person who knowingly executes, or attempts to execute, a scheme or artifice:
>
> (1) to defraud a state or federally chartered or federally insured financial institution; or
>
> (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;
>
> commits a Level 5 felony.

Ind. Code § 35-43-5-8(a).

Investigator Whelan wrote a conduct report charging Keplinger as follows:

> In July 2016 an investigation began into information found on offender Payne['s] . . . . cell phone that was confiscated from him. In the downloaded information and continued investigation [it] was determined that Payne 150319 and Keplinger 128194 both conspired to gain identifying information of subjects on the streets to gain access to credit cards that were in the subjects' names. They would utilize the credit cards to purchase merchandise from different retailers in the South Bend (St. Joseph county) area and . . . with the assistance of individuals from the area [retrieve and] pick up the merchandise and sell [it] at a discount[ed] profit. Profits would be shared amongst all.
>
> At this time there is no further investigation that can be conducted into the incident. One account was verified through subpoenas a[s] belonging to one person [who] was charged a total of over $8,000.00 in a twelve day

3

> period. Information discovered [o]n the phone [showed] that [an]other unknown account ha[d] been charged similar amounts.

ECF 15-1 at 1. The conduct report was based on information from confidential case file 16-ISP-0160, which contained statements, photos, video, interviews, and reports. *Id*. Whelan also prepared a report of investigation detailing the events leading up to charging Keplinger with defrauding a financial institution. ECF 17-1 at 1-6.

On February 22, 2017, Keplinger was notified of the charge when he was served with the conduct and screening reports. ECF 15-1 at 1, ECF 15-3 at 1. During screening, Keplinger requested a statement from offender Payne and the "whole investigation packet" or, in other words, the confidential case file. ECF 15-3 at 1. Payne provided the following written statement: "I did not conspire with Keplinger. I don't even know who that person is." ECF 15-5 at 1. Keplinger's request for the confidential case file was denied. ECF 1 at 3. Keplinger also requested the assistance of a lay advocate and one was provided for him. ECF 15-4 at 1.

The hearing officer held Keplinger's hearing on February 27, 2017. ECF 15-6 at 1. At the hearing, the hearing officer recorded Keplinger's statement: "I [would] plead guilty if I'm guilty. There is no evidence. I haven't seen any evidence against me. That phone was never in my cell. I had nothing to do with this." *Id*. However, on the basis of the conduct report, confidential case file, and a witness statement, the hearing officer found Keplinger guilty of defrauding a financial institution. *Id*.

In his petition, Keplinger argues there are three grounds which entitle him to habeas corpus relief. ECF 1 at 2-3. In his first ground, he contends his due process rights were violated because there was insufficient evidence of his guilt. ECF 1 at 2. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In this case, Whelan's conduct report stems from an eight-month long internal affairs investigation that showed Payne and Keplinger conspired to fraudulently obtain personal identifying information of others in order to gain access to their credit card information. ECF 15-1 at 1, ECF 15 at 8-9, ECF 17-1 at 1-6, 17-2 at 1-3. They would then use the credit card information to make purchases at retail stores. *Id*. Investigators initially discovered the fraudulent scheme on July 3, 2016, when they confiscated Payne's cell phone and downloaded phone numbers, text messages, and photos found on the phone. ECF 15-1 at 1, ECF 15 at 8, ECF 17-1 at 1. One phone number, (260) 312-3328, was connected by nickname and internet search to Keplinger. ECF 15 at 9, ECF 17-1 at 1, ECF 17-2 at 1-3. A second phone number, (574) 310-4343, was traced to an individual named Shannon Sales. *Id*. Computer printouts of the text messages found on the phone showed Keplinger placed large numbers of orders at retail stores in the South Bend, Indiana area. ECF 15-1 at 1, ECF 15 at 8, ECF 17-1 at 1. In particular, on June 12, 2016, text messages sent between Keplinger and Sales documented their purchases at Home Depot and Lowe's Home Improvement stores. ECF 15 at 9, ECF 17-2 at 1-2. After Keplinger and Sales made purchases at these retail stores, individuals

would pick up the merchandise and sell it at a discounted price. ECF 15-1 at 1, 17-1 at 1-3. The profits would then be shared amongst all of the participants in the fraudulent scheme. *Id.*

On December 6, 2016, Keplinger was shaken down and three micro secured digital (SD) cards were found in his possession. ECF 15 at 9, ECF 17-1 at 1. The SD cards contained information about Home Depot orders made in November 2016. A Home Depot investigation returned two names and one phone number from the information on Keplinger's SD cards. ECF 15 at 9, ECF 17-1 at 2. On February 13, 2017, Keplinger was shaken down again and a cell phone was found in his possession. ECF 15 at 9, ECF 17-1 at 3. The information on the phone included personal identifying information of many individuals and text messages concerning items purchased from Lowe's Home Improvement stores. *Id*. In sum, these facts alone constitute "some evidence" that Keplinger was guilty of defrauding a financial institution because he conspired with others to use stolen credit card information to purchase items from retailers and shared in the profits once the ill gotten items were sold.

Nevertheless, Keplinger argues there was insufficient evidence for the hearing officer to find him guilty. ECF 1 at 2. In this regard, he first claims there is no evidence to show that he was "involved in any form or fashion" with Payne's contraband property. *Id*. Keplinger next states that Whelan's theory about this case seems to be "far-fetched" or "misunderstood." *Id*. And lastly he asserts he could not commit the offense because he is in prison and does not know any one in St. Joseph County. *Id*.

But here Keplinger is simply inviting the court to reweigh the evidence. In other words, he is asking the court to accept or credit his story or version of the events in this case. However, the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence." *McPherson*, 188 F.3d at 786. Rather, it is the court's role to determine if the hearing officer's decision to revoke good time credits has some factual basis. *Id*. Because the hearing officer considered Keplinger's statements along with all of the evidence in this case including—the conduct report, confidential case file, and a witness statement—there was no violation of Keplinger's due process rights. *Hill*, 472 U.S. at 456-57 ("the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). In other words, the hearing officer's finding that Keplinger violated a state law as prohibited by offense A-100 was neither arbitrary nor unreasonable in light of the salient facts in this case. Therefore, Keplinger's first ground does not state a basis for habeas corpus relief.

In his second ground, Keplinger argues his due process rights were violated because the hearing officer denied his request to review the confidential case file. ECF 1 at 2. While Keplinger had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, he did not necessarily have a right to personally review that evidence. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . "). Keplinger did not have the right to review the confidential case file

because the release of the file would have given Keplinger and other offenders crucial, sensitive information about the details of the ongoing internal affairs investigation as well as insight into the investigative techniques used by prison investigators. The court has reviewed the confidential case file and finds it is reliable and appropriately withheld from Keplinger.

Nor does the confidential case file contain any exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). While Keplinger has a right to present relevant, exculpatory evidence in his defense, the confidential case file, is made up of incriminating—not exculpatory—evidence. Because the hearing officer, who presided over Keplinger's hearing, thoroughly reviewed and considered the evidence contained in the confidential case file, there was no violation of his due process rights. *White*, 266 F.3d at 767. As stated, the court has reviewed the confidential case file and finds it does not contain any exculpatory evidence. *Jeffries v. Neal*, 737 Fed. Appx 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs.").

To the extent prison officials may have erred in not releasing the confidential case file to Keplinger, that error was harmless. Here, the court notes that while the hearing officer or prison officials could have redacted the file and released that portion

of the file containing Keplinger's text messages to him, he has not shown that the denial of that evidence resulted in actual prejudice rather than harmless error. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Because Keplinger sent and received text messages related to his fraudulent credit card activities, he was already aware of the contents of those messages. In other words, he has not established that being able to review his own text messages would have provided him with anymore information than what he had already known. Thus, Keplinger was not prejudiced by not being able to review the confidential case file. Therefore, his second ground does not identify a basis for granting habeas corpus relief.

In his third ground, Keplinger claims his due process rights were violated because he was denied an impartial hearing. ECF 1 at 3. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id*.

There is no evidence in the record to support Keplinger's claim that the hearing officer subjected him to a partial hearing or was biased against him. While he asserts the hearing officer was "standoffish" and refused to give him the confidential case file,

he has not shown she was directly or otherwise substantially involved in the factual events underlying the disciplinary charge, or the investigation of the incident. *Piggie*, 342 F.3d at 666. The mere fact that Keplinger was denied access to the confidential case file does not establish that the hearing officer was in some way biased against him. Instead, as discussed, the release of the confidential case file posed a security threat as it would have given Keplinger and other offenders confidential, sensitive information about the investigation.

Keplinger further claims that he did not receive an impartial hearing because the hearing officer failed to follow IDOC policy. ECF 1 at 3. In this regard, he claims he was not charged with the fraudulent scheme until seven months after Payne's phone was confiscated even though IDOC policy mandates a 90-day investigation period. *Id*. However, habeas corpus relief can only be granted for "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Failure to follow policy is not a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief") and *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison did not follow internal policies had "no bearing on his right to due process"). Therefore, Keplinger's third ground does not identify a basis for granting habeas corpus relief.

If Keplinger wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma

pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Tyson Keplinger's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on May 10, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT